UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ESTATE OF TONA GRIMMETT,
MICHIGAN AMBULATORY SURGICAL CENTER,
SOUTHEAST MICHIGAN SURGICAL HOSPITAL, LLC,
OAKLAND MRI, LLC,

       Plaintiffs,

v.

                                            Case No. 14-14646

ENCOMPASS INDEMNITY COMPANY,          HON. AVERN COHN

       Defendant.

MICHIGAN AMBULATORY SURGICAL CENTER,
OAKLAND MRI, LLC,

       Cross-Claimants,

v.

ESTATE OF TONA GRIMMETT,

       Cross-Defendant.

_____/

**<u>MEMORANDUM AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS
(Doc. 97), DENYING DEFENDANT'S MOTION TO DISMISS (Doc. 98), AND
DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS (Doc.
99).</u>**

## I.   INTRODUCTION AND PROCEDURAL HISTORY

**1.**

     This is an automobile no-fault insurance case involving personal protection

benefits. Plaintiff Brian Grimmett is the personal representative of the estate of Tona

Grimmett (Grimmett),[1] who was injured in a motor vehicle accident on March 4, 2013. At the time of the accident, Grimmett was insured under a no-fault policy issued by Defendant Encompass Indemnity Company (Encompass) in accordance with Michigan's No-Fault Act, M.C.L. § 500.3101, *et seq.* (No-Fault Act). Grimmett sued Encompass in the Wayne County Circuit Court (14-005777-NF) because Encompass refused to cover her medical expenses (Doc. 8).

Plaintiff Michigan Ambulatory Surgical Center, LLC (MASC) also sued Encompass in the Wayne County Circuit Court (15-014301-NF) for expenses it incurred performing a lumbar spine fusion surgery on Grimmett following the accident (Doc. 49). Encompass removed both cases to federal court, where they were consolidated into the present case (Doc. 27).[2]

Southeast Michigan Surgical Hospital, LLC (Southeast) intervened as a plaintiff at the state level (Doc. 1), seeking to recover from Encompass expenses related to a cervical spine fusion surgery that Southeast performed on Grimmett following the accident.

Oakland MRI, LLC (OMRI) intervened as a plaintiff after the case was removed to federal court (Doc. 21), seeking to recover from Encompass expenses related to an MRI scan that OMRI performed on Grimmett following the accident.

**2.**

On May 25, 2017, the Michigan Supreme Court decided in <u>Covenant Med. Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.</u>, 500 Mich. 191 (2017) that medical service

---

[1] Grimmett died on February 25, 2017, for reasons unrelated to the claim in this case (Doc. 95).
[2] MASC's case number before consolidation was 15-14249.

providers have no statutory cause of action to collect personal protection insurance benefits from no-fault insurers under the No-Fault Act. Id. This holding applies retroactively. W A Foote Mem'l Hosp. v. Michigan Assigned Claims Plan, No. 333360, 2017 WL 3836645, at *14 (Mich. Ct. App. Aug. 31, 2017). In light of Covenant, MASC and OMRI filed amended complaints (Docs. 93, 94) presenting new theories of recovery against Encompass. Both parties also brought cross-claims against Grimmett to recover their expenses. Southeast did not amend its complaint, but has now requested leave to amend in order to cure any deficiencies revealed by the Court's ruling on the present motions.

Now before the Court are Encompass' Motion to Dismiss MASC's claim pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 97), Motion to Dismiss OMRI's claim pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 98), and Motion for Judgment on the Pleadings as to Southeast's claim pursuant to Fed. R. Civ. P. 12(c) (Doc. 99). For the reasons that follow, all three motions are DENIED. Additionally, Southeast is granted leave to amend its complaint.

## II.   LEGAL STANDARDS

### A.  Fed. R. Civ. P. 12(b)(6)

A Fed. R. Civ. P. 12(b)(6) motion seeks dismissal for a plaintiff's failure to state a claim upon which relief can be granted. "To survive a motion to dismiss under Rule 12(b)(6), a 'complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n, 176 F.3d 315, 319 (6th Cir. 1999) (quoting Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988)).

A claim "must be dismissed . . . if as a matter of law it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Neitzke v. Williams, 490 U.S. 319, 327 (1989) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)) (internal quotation marks omitted).

### B. Fed. R. Civ. P. 12(c)

Fed. R. Civ. P. 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A motion for judgment on the pleadings under Rule 12(c) utilizes the same standard of review applicable under Rule 12(b)(6). Wee Care Child Ctr., Inc. v. Lumpkin, 680 F.3d 841, 846 (6th Cir. 2012). Thus, "[f]or purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." Poplar Creek Development Co. v. Chesapeake Appalachia, L.L.C., 636 F.3d 235, 240 (6th Cir. 2011).

### III.   DISCUSSION

The most salient among the healthcare providers' claims are those regarding assignments and third party beneficiaries, since the Covenant court explicitly left open the possibility of a provider cause of action based on each theory. MASC and Southeast argue that Grimmett validly assigned to them her rights to receive payment under her insurance contract with Encompass. MASC and OMRI argue that they are intended third party beneficiaries of the contract between Grimmett and Encompass.

The Court will address each claim in turn.

### A. Assignment

### i. Background

The Michigan Supreme Court explicitly stated in <u>Covenant</u> that "our conclusion today is not intended to alter an insured's ability to assign his or her right to past or presently due benefits to a healthcare provider." <u>Covenant</u>, 500 Mich. at 217 n.40. Thus, while a health care provider no longer has a statutory cause of action against insurers, it may still have a contract-based cause of action if there has been a valid assignment of rights. <u>See Id</u>. at 217 n.39 (acknowledging that contractual causes of action may still exist). An insurer has standing to "challenge an assignment if that challenge would render[ ] the assignment absolutely invalid or ineffective, or void." <u>Conlin v. Mortg. Elec. Registration Sys., Inc.</u>, 714 F.3d 355, 361 (6th Cir. 2013) (quoting <u>Livonia Props. Holdings, LLC v. 12840–12976 Farmington Rd. Holdings, LLC</u>, 399 F. App'x 97, 102 (6th Cir. 2010)) (internal quotation marks omitted). Here, Encompass has standing to challenge the assignments because it argues that the assignments are invalid.

### ii. MASC Assignment

In its amended complaint, MASC alleges that the assignment of rights Grimmett signed on the day of her treatment (Doc. 93)[3] entitles it to receive payment directly from Encompass for the services rendered. Encompass says the assignment is invalid and unenforceable for several reasons: (1) the assignment mentioned only the name "Specialty Surgical Center" and did not reference "Michigan Ambulatory Surgical

---

[3] "[W]hen a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." <u>Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.</u>, 508 F.3d 327, 335–36 (6th Cir. 2007).

Center;" (2) the assignment was for future, not present rights under the policy because proof of reasonableness has to be submitted to the insurer before payment becomes due; (3) the assignment was not notarized, and it was not clear that MASC unambiguously accepted Grimmett's offer to assign rights; (4) the assignment did not comply with the Statute of Frauds because it was not signed by a MASC representative; (5) the assignment did not provide for the right to sue both the insurer and Grimmett; and (6) the policy contained an anti-assignment clause.

### iii.    Southeast Assignment

As previously mentioned, Southeast did not file an amended complaint after Covenant. In its response to Encompass' motion for judgment on the pleadings, however, Southeast asserts that it had a valid assignment of rights from Grimmett. The Court therefore allows Southeast to amend its complaint to include relevant arguments regarding an assignment of rights. See Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave" to amend pleadings.).

Encompass advances many of the same arguments in opposition to Southeast's assignment as it did regarding MASC's assignment, namely that: (1) Southeast's exact name does not appear on the assignment; (2) the assignment was for future benefits; (3) it is not clear that there was an offer and acceptance of the assignment; (4) the assignment violates the Statute of Frauds; and (5) the insurance contract contained an anti-assignment clause. In addition, Encompass argues that the assignment was not supported by consideration.

### iv.    Assumed Name

Michigan law provides that "[a] domestic or foreign corporation may transact business under any assumed name or names other than its corporate name." Mich. Comp. Laws § 450.1217. "[T]he obvious purpose of the [assumed name] statute is to inform the public with whom it is dealing, and thereby serve its convenience and to prevent imposition and fraud." Bankers Tr. Co. v. Bradfield, 324 Mich. 116, 123 (1949) (internal quotation marks omitted). This means that "[a] corporation that has complied with this statute has notified the public constructively regarding its assumed name. Accordingly, parties contracting with agents of the corporation operating under the assumed name cannot claim that they were without notice regarding the existence or identity of the corporation." Penton Pub., Inc. v. Markey, 212 Mich. App. 624, 627 (1995).

Michigan courts have also declined to allow a party to avoid a contract even though an assumed name certificate was not filed. See, e.g. People's State Bank v. Trombly, 241 Mich. 199, 208 (1928); Rossello v. Trella, 206 Mich. 20, 24 (1919). While an assignment and a contract are not the same in all respects, both involve manifestation of intent toward the other party. See Burkhardt v. Bailey, 260 Mich. App. 636, 654–55 (2004); W. Michigan Univ. Bd. of Trustees v. Slavin, 381 Mich. 23, 31 (1968) ("An offer is a unilateral declaration of intention."). Thus, where the identity of an assignee is at issue, Michigan law regarding contracts entered into under an assumed name can be applied.

Here, in each case Grimmett knew she was assigning her rights to the hospital that was about to perform surgery. Since MASC filed a Certificate of Assumed Name

before the date of the surgery,[4] Grimmett was on constructive notice that Specialty Surgical Center and MASC were the same entity. Therefore, whether or not she actually knew the correct name of the hospital is irrelevant to determining the validity of the assignment.

Because Southeast only showed it had an assignment in its response to Encompass' motion, it did not have a chance to respond to the name argument in Encompass' reply. As such, it has not provided documentation showing that "Michigan Surgical Hospital," the name that appears on the assignment, is the same entity as "Southeast Michigan Surgical Hospital." It is for this reason also that the Court grants leave for Southeast to amend its complaint.

### v.    Assignment of Present Rights

In Michigan, an assignment is valid "if it clearly reflects the intent of the assignor to presently transfer 'the thing' to the assignee." Burkhardt v. Bailey, 260 Mich. App. 636, 654–55 (2004). As the Covenant court noted, only past or present rights to insurance benefits are assignable. Covenant, 500 Mich. at 217 n.40; Mich. Comp. Laws § 500.3143 (providing that assignments of future rights are void). Therefore, the Court must determine "whether the assignment in question purports to assign only past due and presently due benefits or whether it purports to assign future benefits as well." Prof'l Rehab. Assocs. v. State Farm Mut. Auto. Ins. Co., 228 Mich. App. 167, 172 (1998).

---

[4] MASC attaches to its brief a document from the Michigan Department of Licensing and Regulatory Affairs showing that the two entities are the same. "A court may consider matters of public record in deciding a motion to dismiss without converting the motion to one for summary judgment." Commercial Money, 508 F.3d at 336.

In <u>Aetna Cas. & Sur. Co. v. Starkey</u>, 116 Mich. App. 640 (1982), the Michigan Court of Appeals refused to enforce an assignment of benefits that "would become payable" over the course of a hospitalization. <u>Id</u>. at 642, 646. In contrast, the assignment from Grimmett to MASC reads "I hereby assign to Specialty Surgical Center (the 'Center') my rights to collect no-fault insurance from my auto insurer for my care at the Center." (Doc. 93). The assignment from Grimmett to Southeast reads "I assign and authorize payment directly to Michigan Surgical Hospital of any healthcare benefits that I am entitled to receive." (Doc. 100). Unlike in <u>Starkey</u>, the language in both assignments is entirely in the present tense, the treatment at each center consisted of one discrete operation, and Grimmett signed the assignments on the same days the respective operations were performed. Since the No-Fault Act provides that "[p]ersonal protection insurance benefits are payable as loss accrues," Mich. Comp. Laws § 500.3142(1), Grimmett essentially assigned her rights as they came into existence. Therefore, the MASC and Southeast assignments referred to present rights and are not void under Mich. Comp. Laws § 500.3143. <u>See Prof'l Rehab</u>, 228 Mich. App. at 173-74 (finding present-tense assignment valid to the extent it referred to past or present benefits).

Encompass is incorrect to rely on subsection (2) of § 500.3142, which provides that "[p]ersonal protection insurance benefits are overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained." Mich. Comp. Laws § 500.3142(2). Subsection (2) only describes when benefits are overdue, not when they first become due.

### vi.    Anti-Assignment Clause

Michigan courts have enforced anti-assignment clauses that prohibit assignment of future benefits, but not those that prohibit assignment of accrued losses. Covenant Med. Ctr., Inc. v. Auto-Owners Ins. Co., No. 17-CV-11176, 2017 WL 4572327, at *4 (E.D. Mich. Oct. 13, 2017) ("[Under] Michigan law . . . . an anti-assignment clause will not be enforced where a loss occurs before the assignment, because in that situation the assignment of the claim under the policy is viewed no differently than any other assignment of an accrued cause of action.") (quoting Century Indem. Co. v. Aero-Motive Co., 318 F. Supp. 2d 530, 539 (W.D. Mich. 2003)). See also Roger Williams Insurance Co. v. Carrington, 43 Mich. 252 (1880) ("the provision of the policy forfeiting it for an assignment without the company's consent is invalid, so far as it applies to the transfer of an accrued cause of action"); In re Jackson, 311 B.R. 195, 201 (Bankr. W.D. Mich. 2004) ("This finding is based on the theory that once a party to a contract performs its obligations to the point that the contract is no longer executory, its right to enforce the other party's liability under the contract may be assigned without the other party's consent, even if the contract contains a non-assignment clause.") (citing Detroit, T. & I.R. Co. v. Western Union Telegraph Co., 200 Mich. 2 (1918)).

Since the Court has already determined that Grimmett made the assignments at the same time her losses accrued, it declines to enforce the anti-assignment clause. This is a sound result because Michigan law does not support the upholding of contractual provisions in insurance policies that are contrary to public policy. See Farm Bureau Mut. Ins. Co. of Michigan v. Nikkel, 460 Mich. 558, 568 (1999) (quoting Raska v. Farm Bureau Mut. Ins. Co. of Michigan, 412 Mich. 355, 361-62 (1982)). Allowing insurers to prevent the assignment of accrued claims would unfairly disadvantage

insureds without providing any benefit to the insurers other than the avoidance of obligations already incurred. See Wonsey v. Life Ins. Co. of N. Am., 32 F. Supp. 2d 939, 943 (E.D. Mich. 1998) ("The rationale behind these cases is derived from the implicit recognition that the obligor . . . would not suffer any harm by a mere assignment of payments under a contract. Harm to obligor would result, however, in cases involving . . . situations where the duties owed to the parties may change depending on the identity of the assignee."); cf. McHugh v. Manhattan Fire & Marine Ins. Co., 363 Mich. 324, 328 (1961) (upholding anti-assignment provision where "the identity of the insured is a matter of importance to the insuring company.").

Further, lower Michigan courts have emphasized that Michigan statutes prohibit contract terms that prevent assignment of health insurance receivables. Mich. Spine & Brain Surgeons, PLLC v. State Farm Mut. Auto. Ins. Co., No. 17-158827-NF (Oakland Cty. Cir. Ct. Aug. 9, 2017); Vision Specialists of Mich. v. Amica Mut. Ins. Co., No. 17-31719-GC-2 (Oakland Cty. Dist. Ct. Oct. 13, 2017). Specifically, Michigan's implementation of the Uniform Commercial Code (UCC) provides:

> (1) Except as otherwise provided in subsection (2) or (4), a term in a promissory note or in an agreement between an account debtor and a debtor that relates to a health-care-insurance receivable or a general intangible, including a contract, permit, license, or franchise, and which term prohibits, restricts, or requires the consent of the person obligated on the promissory note or the account debtor to, the assignment or transfer of, or creation, attachment, or perfection of a security interest in, the promissory note, health-care-insurance receivable, or general intangible, is ineffective to the extent that the term does 1 or more of the following:
>
> (a) Would impair the creation, attachment, or perfection of a security interest.
>
> (b) Provides that the assignment or transfer or the creation, attachment, or perfection of the security interest may give rise to a default, breach, right of recoupment, claim, defense, termination, right of termination, or remedy under the promissory note, health-care-insurance receivable, or general intangible.

Mich. Comp. Laws § 440.9408. The scope provision of the Michigan UCC includes "an assignment by or to a health-care provider of a health-care-insurance receivable and any subsequent assignment of the right to payment." Mich. Comp. Laws § 440.9109(4)(h). Thus, Encompass' anti-assignment clause is also invalid by statute.

### vii.    Other Arguments

Encompass' other arguments with respect to the assignments do nothing to advance its case. Since only the intent of the assignor is relevant to creating a valid assignment, notarization and "acceptance" by the assignee are not necessary. Grimmett's signature on the assignment forms sufficiently manifests her intent to assign her right to insurance benefit payments to MASC and Southeast.

Further, the Michigan Statute of Frauds provides that an "assignment of things in action" must be in writing and signed "by the party to be charged." Mich. Comp. Laws § 566.132. Assuming without deciding that the rights assigned in this case were "things in action," MASC is correct to point out that Grimmett is the party to be charged. Since Grimmett's signature does appear on the assignments, this argument fails.

MASC is also correct to argue that it may sue both Grimmett and Encompass at the same time, as the assignment provides that "I [Grimmett] recognize and agree that this assignment of rights simply allows the Center to collect bills for my care at the Center directly from my auto carrier; it does _not_ relieve me of my obligation for payment of any medical bills for my care at the Center." (Doc. 93) (emphasis in original). Thus, were MASC unable to recover its expenses from Encompass, it would still have a valid claim against Grimmett. Fed. R. Civ. P. 8(d)(3) allows a party to bring inconsistent claims at the same time.

Finally, it is axiomatic that assignments do not need consideration to be valid.

Coe v. Hinkley, 109 Mich. 608, 611-12 (1896).

## B. Third-Party Beneficiary

Parties who are intended third-party beneficiaries to a contract may sue on the contract, but parties who are merely incidental third-party beneficiaries may not.

Brunsell v. City of Zeeland, 467 Mich. 293, 296 (2002). In Covenant, the Michigan Supreme Court did not prohibit healthcare providers from suing insurers as intended third-party beneficiaries to an insurance contract:

> While defendant argues that a provider likewise possesses no contractual right to sue a no-fault insurer given that healthcare providers are incidental rather than intended beneficiaries of a contract between the insured and the insurer, this Court declines to make such a blanket assertion. That determination rests on the specific terms of the contract between the relevant parties.

Covenant, 500 Mich. at 217 n.39. The majority cited Schmalfeldt v. N. Pointe Ins. Co., 469 Mich. 422 (2003), in which it was held that "[a] person is a third-party beneficiary of a contract only when that contract establishes that a promisor has undertaken a promise directly to or for that person." Id. at 428 (citing Mich. Comp. Laws § 600.1405). Further, "[a]n objective standard is to be used to determine, from the form and meaning of the contract itself . . . whether the promisor undertook to give or to do or to refrain from doing something directly to or for the person claiming third-party beneficiary status." Id. (citation omitted).

In order to designate a party as an intended third-party beneficiary to a contract, Michigan courts have required that the contract identify either the party itself or the reasonably specific class to which the party belongs. In Schmalfeldt, the Michigan Supreme Court held that a member of the public who had been injured in a bar fight

was not an intended third-party beneficiary of the bar's commercial insurance policy because

> [n]othing in the insurance policy specifically designates Schmalfeldt, or the class of business patrons of the insured of which he was one, as an intended third-party beneficiary of the medical benefits provision. At best, the policy recognizes the possibility of some incidental benefit to members of the public at large, but such a class is too broad to qualify for third-party status under the statute.

Id. at 429. See also Shay v. Aldrich, 487 Mich. 648, 665 (2010) (finding that police officers qualified as intended third-party beneficiaries where contract *unambiguously* referenced "all other persons"); Koenig v. City of S. Haven, 460 Mich. 667, 683-84 (1999) (finding "the public" as an *implied* beneficiary to be too broad to qualify as a reasonably identified class); Benefield v. Cincinnati Ins. Co., No. 300307, 2013 WL 1149552, at *6 (Mich. Ct. App. Mar. 19, 2013) (finding that a group of "140 unit members" was "sufficiently identifiable."); Vanerian v. Charles L. Pugh Co., 279 Mich. App. 431, 436 (2008) (holding that the plaintiff was a third-party beneficiary because she was "expressly referred to in the contract."); A.B. Petro Mart, Inc. v. Ali T. Beydoun Ins. Agency, Inc., 317 Mich. App. 290, 298 (2016) (declining to find that plaintiff was a third-party beneficiary because "the insurance contract simply does not refer to" him). Requiring that a third-party beneficiary class be sufficiently specific "assure[s] that contracting parties are clearly aware that the scope of their contractual undertakings encompasses a third party, directly referred to in the contract, before the third party is able to enforce the contract." Koenig, 460 Mich. at 677.

Since Covenant, one Michigan lower court has found that healthcare providers are intended third-party beneficiaries of no-fault insurance contracts because of the nature of the no-fault system:

> One of the primary purposes of an auto insurance policy is to insure the policy
> holder and cover any medical expenses that the policy holder may have that are
> related to an auto accident. Even though a specific medical provider is not a
> known or named party to the contract, they are certainly contemplated in the
> policy coverage.

Advanced Spine & Headache Ctr. v. 21st Century Centennial Ins. Co., No. 17-30412-

GC-2 (Oakland Cty. Dist. Ct. Oct. 10, 2017); see also Vision Specialists, No. 17-31719-

GC-2 at 3. The court in these cases declined to apply Schmalfeldt in the no-fault

context, reasoning that:

> In Schmalfeldt . . . . [t]here was no promise to directly benefit the patron. In the
> instant case, the insurance policy between the injured and Defendant is for the
> sole purpose of covering the injured's medical bills resulting from an auto
> accident. It is intended to cover the exact services at issue here, coverage that
> directly benefits the medical providers. This is a distinction with a signinficant [sic]
> difference.

Advanced Spine, No. 17-30412-GC-2 at 3 n.1. This is in keeping with the fact that the

Michigan Supreme Court has considered the purpose of a contract and the statutory

scheme underlying a contract in deciding whether plaintiffs were intended third-party

beneficiaries. See Brunsell, 467 Mich. at 298 ("[T]he contractual provision at issue was

intended to delineate the obligations of the city and the bank with regard to the

premises, not to directly benefit third parties."); Blackwell v. Citizens Ins. Co. of Am.,

457 Mich. 662, 668 (1998) ("We note that plaintiff may reasonably be viewed as an

intended third-party beneficiary of the contract between Citizens and her employer. This

Court has held that the legislative policy behind the WDCA is to provide financial and

medical benefits to the victims of work-connected injuries in an efficient, dignified, and

certain form.") (internal quotation marks omitted); see also Vanerian, 279 Mich. App.at

436 (2008) ("[T]he whole and singular purpose of the contract was to secure repairs to

the flooring in plaintiff's basement.").

Here, the language of the contract between Grimmett and Encompass reads:

C. Covered person as used in this endorsement means:
   1. You or any family member injured in an auto accident;
   2. Anyone else injured in an auto accident;
      a. While occupying your covered auto; or
      b. If the accident involves any other auto:
         (1) Which is operated by you or any family member; and
         (2) To which Personal Liability Motor Vehicle of this policy applies.
      c. While not occupying any auto if the accident involves your covered auto.
. . .

II.A. We will pay personal injury protection benefits to or for a covered person who sustains bodily injury.
. . .

[P]ersonal injury protection benefits consist of the following:
   1. Medical expenses. Reasonable and necessary medical expenses incurred for a covered person's:
      a. Care;
      b. Recovery; or
      c. Rehabilitation.

(Doc. 97).

While Covenant cited Schmalfeldt for the proposition that intended third-party beneficiary status "rests on the specific terms of the contract between the relevant parties," Covenant, 500 Mich. at 217 n.39, it does not follow that the Michigan Supreme Court meant to imply that the same level of specificity required of the premises liability insurance contract in Schmalfeldt would also be required of a no-fault insurance contract. In fact, the third-party beneficiary question was not considered in Covenant because it had not been raised by the parties. Id. OMRI aptly argues that the no-fault insurance system is structured in such a way that benefit payments can be made directly from the insurer to the healthcare provider, meaning that the insurer necessarily

knows that healthcare providers will directly benefit from the contract between the insurer and insured.

The language of the present contract can be condensed to "[w]e will pay . . . . reasonable and necessary medical expenses . . . . to <u>or for</u> a covered person who sustains bodily injury." (Doc. 97) (emphasis added). Since it includes the word "for" in addition to the word "to," the contract contemplated payment to third parties on behalf of the insured, and the most obvious parties to which payments for medical expenses would be made are healthcare providers. While the Michigan Supreme Court warned against implying a class of third-party beneficiaries in <u>Koenig</u>, 460 Mich. at 683, it also stated in that case that the purpose of the word "directly" in Mich. Comp. Laws § 600.1405 is to make parties aware that their contracts involve a third party. <u>Id.</u> at 677. When they enter into a no-fault contract, insurers already know that healthcare providers will benefit from insurers' payments, and healthcare providers are not as broad a class as "the public" in <u>Koenig</u>. The Court therefore finds that MASC and OMRI are intended third beneficiaries of Grimmett and Encompass' insurance contract.

### C. Other

The Court is not persuaded by the parties' other arguments. However, it will briefly address them in the interest of completeness.

### i. One Year Back Rule

Encompass says that because MASC and OMRI filed amended complaints more than one year after the respective procedures were performed, their claims are barred by the "one year back" rule articulated in Mich. Comp. Laws § 500.3145:

> An action for recovery of personal protection insurance benefits payable under this chapter for accidental bodily injury may not be commenced later than 1 year

17

after the date of the accident causing the injury unless written notice of injury as provided herein has been given to the insurer within 1 year after the accident. . . [in which case] the action may be commenced at any time within 1 year after the most recent allowable expense, work loss or survivor's loss has been incurred.

Id. Encompass is incorrect. The date of the amended complaints is irrelevant since Fed. R. Civ. P. 15(c)(1)(B) allows an amended pleading to relate back to the date the original pleading was filed if the amended pleading asserts a claim arising from the same transaction or occurrence described in the original pleading. That is the case here.

### ii.    Lien

OMRI alleges that it is a "secured lien holder and creditor" of Grimmett because Grimmett signed a Payment Policy contracting to pay for all medical services rendered (Doc. 94). OMRI also alleges that it has a "perfected security interest in the payment of services by Defendant Encompass." (Id.). Because Encompass has the duty to indemnify Grimmett under the No-Fault Act, OMRI says that it is entitled to enforce its lien and receive the amount owed directly from Encompass.

OMRI is correct to state that it has a security interest against Grimmett, but claiming that Encompass has a statutory duty to indemnify Grimmett and pay OMRI directly is just another way of describing the statutory cause of action now prohibited by Covenant. The Payment Policy Grimmett signed expressly states "[p]lease be aware that the balance of your claim is your responsibility whether or not your insurance company pays your claim. You [sic] insurance benefit is a contract between you and your insurance company." (Id.). Thus, the policy only describes the obligations between OMRI and Grimmett, and contains no language giving OMRI an interest in payments from Encompass

### iii.    Intervention

OMRI also alleges that it has standing to enforce its lien under the No-Fault Act because Covenant does not apply to intervenors. OMRI relies on Michigan State AFL-CIO v. Miller, 103 F.3d 1240 (6th Cir. 1997), in which the Sixth Circuit stated that "an intervenor need not have the same standing necessary to initiate a lawsuit." Id. at 1245. OMRI says it has a direct interest in the outcome of the case and thus should be allowed to proceed as an intervenor. OMRI also relies on Michigan cases and court rules, but this Court will only consider federal procedural rules under the well-established principle espoused in Erie R. Co. v. Tompkins, 304 U.S. 64 (1938).

Encompass says that OMRI and Grimmett are seeking different relief, which prohibits OMRI from intervening according to Town of Chester, N.Y. v. Laroe Estates, Inc., 137 S. Ct. 1645 (2017), in which the Supreme Court held that "at the least, an intervenor of right must demonstrate Article III standing when it seeks additional relief beyond that which the plaintiff requests." Id. at 1651.

Encompass is correct that OMRI and Grimmett are seeking different relief because OMRI would be seeking a money judgment in its own name. Since the Supreme Court specifically stated that different relief "includes cases in which both the plaintiff and the intervenor seek separate money judgments in their own names," Id., OMRI cannot use intervention as a means of bypassing Covenant.

### iv.    Sufficiency of Pleading

Encompass also challenges Southeast's complaint on the grounds that the allegations are bare and conclusory, arguing that Southeast should have specified which "terms and conditions" of the insurance policy created Encompass' obligation

toward Grimmett. Since the Court grants Southeast leave to amend its complaint, this argument is moot.

## IV.    CONCLUSION

### 1.

In sum, the claims of all three healthcare provider plaintiffs survive their respective motions to dismiss. The assignment from Grimmett to MASC was valid, OMRI is an intended third-party beneficiary to the contract between Grimmett and Encompass, and Southeast would likely have a valid cause of action based on assignment after amending its complaint.

### 2.

An additional comment is in order. While the Covenant majority found that healthcare providers could receive benefit payments under the No-Fault Act, it also said that the right to receive payments did not create a cause of action. Following that reasoning, however, the No-Fault Act also did not expressly create a cause of action even for the injured person. Covenant, 500 Mich. at 221 (Bernstein, J., dissenting).

The statutory language interpreted by the Michigan Supreme Court in Covenant was present in the original 1973 No-Fault Act and remains largely unchanged. See 1972 Mich. Pub. Act No. 294. Since then, healthcare providers have relied on the No-Fault Act (which requires all people to be insured) to get paid for the services they provide to patients. At least since the 1980's, healthcare providers have brought suits or intervened in suits against insurers in order to protect their own interests by advocating for insureds. See, e.g. Dean v. Auto Club Ins. Ass'n, 139 Mich. App. 266 (1984); Johnson v. Michigan Mut. Ins. Co., 180 Mich. App. 314 (1989); LaMothe v. Auto Club

Ins. Ass'n, 214 Mich. App. 577 (1995); Wyoming Chiropractic Health Clinic, PC v. Auto-Owners Ins. Co., 308 Mich. App. 389 (2014). The Covenant decision has now given the insurance world an unexpected arrow in its quiver that is to the detriment of the broader purposes of the no-fault scheme.

A statutory interpretation principle enunciated in the sixteenth century is still to be heeded today: that judges must seek to ascertain "[w]hat was the mischief and defect for which the common law did not provide." Heydon's Case, 76 Eng. Rep. 637, 638 (Ex. 1584). In 1973, the No-Fault Act endeavored to cure at least three forms of mischief: inefficient and expensive litigation, high healthcare costs, and the reality that many plaintiffs injured in automobile accidents were not adequately compensated. See Dean, 139 Mich. App. At 273; McKendrick v. Petrucci, 71 Mich. App. 200, 206 (1976); Shavers v. Kelley, 402 Mich. 554, 579-80 (1978); In re Requests of Governor & Senate on Constitutionality of Act No. 294 of Pub. Acts of 1972, 389 Mich. 441, 491 (1973); see also James T. Mellon & David A. Kowalski, *The Foundations and Enactment of Michigan Automobile No-Fault Insurance*, 87 U. Det. Mercy L. Rev. 653, 677 (2010). Thus, imposing barriers to providers being assured payment does not make good sense. Barriers result in a less efficient litigation process, an increase in healthcare costs, and the elimination of a significant source of plaintiff advocacy.

SO ORDERED.


s/Avern Cohn
AVERN COHN
 UNITED STATES DISTRICT JUDGE

Dated: November 21, 2017
 Detroit, Michigan